IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MYPORT, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00114-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. and | § | |
| SAMSUNG ELECTRONICS AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the Court is Defendants' Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, "Samsung") Motion for Summary Judgment of Unenforceability (the "Motion"). (Dkt. No. 52.) In the Motion, Samsung moves for summary judgment under Rule 56. (*See id.* at 2–3.) For the following reasons, the Motion should be **DENIED**.

### II. BACKGROUND

MyPort, Inc. ("MyPort") filed suit against Samsung on April 15, 2022, alleging infringement of U.S. Patent Nos. 9,832,017 (the "'017 Patent"), 10,237,067 (the "'067 Patent"), and 10,721,066 (the "'066 Patent") (collectively, the "Patents-in-Suit"). (Dkt. No. 1.) All three Patents-in-Suit are subject to the same terminal disclaimer which provides:

> The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.
>
> In making the above disclaimer, the owner does not disclaim the terminal part of the term of any patent granted on the instant application that would extend to the expiration date of the full statutory term of the prior patent, "as the term of said prior patent is presently shortened by any terminal disclaimer," in the event that said prior patent later: … expires for failure to pay a maintenance fee … .

(*See* Dkt. No. 52-2 at 1.) The "prior patent" referenced in the disclaimer is U.S. Patent No. 7,778,438 (the "'438 Patent"). (*See id.*) The '438 Patent expired on September 20, 2018. (Dkt. No. 56 at 3.)

Prior to MyPort's ownership of the Patents-in-Suit, they were owned by MyPort IP, Inc. ("MyPort IP") who also owned the '438 Patent. (Dkt. No. 52 at 2.) MyPort IP assigned the Patents-in-Suit to MyPort on January 22, 2022. (Dkt. No. 52 at 2.) The assignment agreement provides that:

> The right, title, and interest conveyed in this Assignment is to be held and enjoyed by Assignee and Assignee's successors as fully and exclusively as it would have been held and enjoyed by Assignor had this assignment not been made. The rights transferred from the Assignor to the Assignee include the right to sue for and recover or otherwise collect damages (including lost profits and/or a reasonable royalty during the entire term of the Patents) with respect to past and future acts of infringement involving such Patents.

(Dkt. No. 56-3 at 3–4.) On February 14, 2023, MyPort stated in an interrogatory response that "MyPort … owns the Patents-in-Suit, and no other patents." (Dkt. No. 52-6 at 6, 8.)

After Samsung filed the Motion, MyPort IP then executed an agreement assigning any residual interest it had in the '438 Patent to MyPort on April 19, 2023. (*See* Dkt. No. 56-5.) This assignment agreement also purports to have an "Effective Date" of January 22, 2022. (*Id.* at 1.)

### III. LEGAL STANDARD

#### A. Terminal Disclaimer

A terminal disclaimer moots rejections during patent prosecution based on double patenting. *See generally*, Chisum on Patents § 9.01. Under 35 U.S.C. § 253(a), a disclaimer of the terminal part of a patent "shall be in writing, and recorded in the Patent and Trademark Office; and it shall thereafter be considered as part of the original patent to the extent of the interest possessed by the disclaimant and those claiming under him." Under Patent Office regulations, a

terminal disclaimer must include "a provision that any patent granted on that application … shall be enforceable only for and during such period that said patent is commonly owned with the application or patent that formed the basis for" the double patenting rejection. See 37 C.F.R. § 1.321(c). This regulation is designed to "prevent harassment of an alleged infringer by multiple parties due to subsequent different ownership of multiple patents granted as the result of filing a terminal disclaimer to overcome a double patenting rejection." *In re Van Ornum*, 686 F.2d 937, 945 (Ct. Cust. & Pat. App. 1982).

### B. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (citing Liberty Lobby, 477 U.S. at 247).

"[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016) (citing *PC Connector Sols.*

*LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) and *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 39 n.8 (1997)).

## IV. ANALYSIS

Samsung moves for summary judgment on the ground that MyPort breached its terminal disclaimer. (Dkt. No. 52 at 3.) Samsung argues that the Patents-in-Suit were not jointly owned at the time the suit was filed. (*Id.* at 4.) As such, Samsung argues, the Patents-in-Suit are unenforceable "for and during such period that [each patent] and the prior patent are" not commonly owned.[1] (*Id.*) Samsung also argues that co-ownership of terminally disclaimed patents by different but related legal entities is insufficient. (Dkt. No. 52 at 3 (citing *Email Link Corp. v. Treasure Island, LLC*, No. 2:11-cv-01433-ECR-GWF (D. Nev. Sept. 25, 2012) ("Because the '176 Patent and the '789 are not owned by the same entity as required by the Terminal Disclaimer, we hold that the '176 Patent is unenforceable as a matter of law.")).)

MyPort makes four arguments in response. (Dkt. No. 56.) First, MyPort argues that the Patents-in-Suit have always been commonly owned because both MyPort and MyPort IP are under the sole, common ownership of Mr. Mike Malone, who owns 100% of MyPort and MyPort IP. (*Id.* at 5.) Moreover, MyPort contends, this factual scenario qualifies as common ownership under the Manual of Patent Examining Procedure ("MPEP"). (*Id.*) The MPEP defines common ownership, and states, as an example, "Parent Company owns 100% of Subsidiaries A and B – inventions of A and B are commonly owned by the Parent Company." (*Id.* (citing MPEP § 2146.02).)

Second, MyPort argues that the '438 Patent was assigned to MyPort along with the other Patents-in-Suit via the agreement executed on January 22, 2022. (*Id.* at 6–7.) The January 22 agreement states:

---

[1] At the time the Motion was filed, March 31, 2023, MyPort had not yet executed the agreement with MyPort IP assigning the '438 Patent to MyPort. (*See* Dkt. No. 52; Dkt. No. 56 at 4.)

4

> The right, title, and interest conveyed in this Assignment is to be held and enjoyed by Assignee and Assignee's successors as ***fully and exclusively as it would have been held and enjoyed by Assignor had this assignment not been made***. The rights transferred from the Assignor to the Assignee ***include the right to sue for and recover or otherwise collect damages (including lost profits and/or a reasonable royalty during the entire term of the Patents) with respect to past and future acts of infringement involving such Patents***.

(*Id.* at 7 (emphasis in original).) According to MyPort, this language means that the intent of the assignor, MyPort IP, was to give MyPort the all rights necessary to enforce the Patents-in-Suit, which includes any rights to the '438 Patent. (*Id.* at 8.)

Third, MyPort argues that if there was any breach of the terminal disclaimer, it did not occur until January 22, 2022, and did not deprive MyPort of enforceable title and standing to bring suit. (*Id.* at 9–10 (citing *Fall Line Pats., LLC v. Zoe's Kitchen, Inc.*, No. 6:18-CV-00407-RWS, 2019 WL 13218778 at *4 (E.D. Tex. July 26, 2019) (denying motion for unenforceability and standing holding "even if the '748 Patent was unenforceable at the time of filing due to lack of common ownership with the '816 Patent, Plaintiff still held enforceable title to the '748 Patent and had standing to bring suit.")).)

Fourth, MyPort argues that it cured any alleged defect in the January 22 assignment by executing the April 19, 2023 contract, which assigns any remaining interest in the '438 Patent to MyPort and has an effective date of January 22, 2022. (*Id.* at 10.) MyPort cites legal authority stating that under Texas law, an assignment may have a retroactive effective date. (*Id.* at 10–11 (citing *Deutsche Bank Nat'l Trust Co. v. Burke*, 655 Fed. Appx. 251, 254 (5th Cir. July 19, 2016) ("At least two Texas Courts of Appeals have considered this very question and both have held that an assignment may have a retroactive 'effective date.'")).) MyPort also asserts that the federal law supports the same. (*Id.* at 11 (citing *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (affirming the validity of a retroactive assignment of the right to sue for past

5

damages)).) In light of this, MyPort also contends that the April 19 contract explicitly joins any rights to past damages for the '438 Patent with MyPort's pre-existing rights to past, present, and future damages. (*Id.*) MyPort argues that this therefore prevents "multiple infringement suits by different assignees asserting essentially the same patented invention," which is the rationale for terminal disclaimers. (*Id.* (quoting *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013)).)

Samsung makes four arguments in reply. (Dkt. No. 59.) Samsung first argues that there was a breach of the co-ownership requirement when the Patents-in-Suit and the '438 Patent were owned by distinct corporate entities. (*Id.* at 1–3.) Samsung asserts that Section 261 of the Patent Act provides that patents "shall have the attributes of personal property" and, if conveyed, must be done so "by an instrument in writing." (*Id.* at 1 (quoting 35 U.S.C. § 261).) According to Samsung, this therefore means that ownership only vests in the person or entity that has legal title to the patent. (*Id.*) Samsung also argues that MyPort's conception of common ownership ignores the corporate form. (*Id.* at 2 (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Id.* at 475 ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets.")).) Samsung also notes that the MPEP self-proclaims that it does not have the force of law, and that the section relied upon by MyPort relates only to the irrelevant issue of disqualifying prior art under 35 U.S.C. § 103(c). Further, Samsung contends that MyPort's arguments ignore precedential decisions equating "common ownership" with "common assignment." (*Id.* at 2–3 (citing *In re Bowers*, 359 F.2d 886, 889 (C.C.P.A. 1966) (using "commonly owned" and "common assignee" interchangeably)).)

Second, Samsung argues that MyPort did not transfer the '438 Patent on January 22, 2022, as evidenced by its subsequent interrogatory response: MyPort "owns the Patents-in-Suit, and no

6

other patents." (*Id.* at 3 (citing Dkt. No. 52-6 at 4)).) Moreover, Samsung argues that Mr. Malone's subjective belief is irrelevant under Texas law. (*Id.* at 3–4 (citing *Parental Guide of Tex., Inc. v. Thomson, Inc.*, 446 F.3d 1265, 1269 (Fed. Cir. 2006) ("[A] court is concerned with the objective intent evidenced by the language, as opposed to the subjective intent of the parties.")).) The assignment mentions only three patents and, according to Samsung, should therefore not be interpreted to include more. (*Id.* at 4.)

Third, Samsung argues that "[i]n light of the April 19, 2023 assignment, the Court should grant partial summary judgment that the Patents-in-Suit were unenforceable from January 22, 2022 until April 19, 2023." (*Id.*)

Fourth, Samsung argues that the April 19, 2023 contract cannot retroactively make the Patents-in-Suit enforceable during the period of divided ownership. (*Id.* at 4–6.) Indeed, Samsung argues, the April 19, 2023 agreement is an impermissible *nunc pro tunc* assignment because it does not "reflect the reality" of what occurred. (*Id.* at 5 (citing *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano et al.*, 140 S. Ct. 696, 700-701 (2020) (citations omitted)).) Samsung contends that a retroactive assignment cannot retroactively confer standing to sue, so a retroactive assignment cannot create common ownership of the Patents-in-Suit between January 22, 2022 and April 19, 2023. (*Id.* at 4–6 (citing *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366-67 (Fed. Cir. 2010) (holding that the standing "requirement can not be met retroactively")).) As further support for its position, Samsung relies on *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*, where the Federal Circuit found that a patentee could not escape the consequences of failing to mark in compliance with 35 U.S.C. § 287(a) by disclaiming the patent claim as if it never existed. (*Id.* at 6 (citing 853 F.3d 1370, 1382–83 (Fed. Cir. 2017).) This is because, the Federal Circuit reasoned, that allowing disclaimer would "undermine[] the marking

statute's public notice function" and "provides an end-run around the marking statute and is irreconcilable with the statute's purpose." (*Id.* (quoting *Rembrandt*, 853 F.3d at 1383).) Samsung argues that accepting MyPort's arguments would provide a similarly undesirable result: allowing MyPort to end-run around its breach of its public promise in a manner that is irreconcilable with the terms of that promise. (*Id.*)

MyPort makes three arguments in sur-reply. (Dkt. No. 62.) First, MyPort again argues that the Patents-in-Suit and the '438 Patent are commonly owned under the definition provided by the MPEP. (*Id.* at 1–3.) Further, MyPort contends that that the MPEP "is entitled to judicial notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict." (*Id.* at 1 (quoting *Airbus S.A.S. v. Firepass Corp.*, 793 F.3d 1376, 1380 (Fed. Cir. 2015) (quotations omitted)).) MyPort further argues that Samsung's argument about the written requirement of § 261 supports MyPort's position. (*Id.* at 2 (citing *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1074 (Fed. Cir. 2020) ("The agreement was effective when made, not as of the date of the reformation. The written instrument requirement in § 261 does not define when the agreement occurs; it merely requires that some writing confirm the fact of assignment. By virtue of the reformation, the written instrument was corrected *nunc pro tunc*, to the point of the assignment.")).)

Second, MyPort argues that there is a genuine issue of material fact as to whether the January 22, 2022 agreement assigns the '438 Patent. (*Id.* at 3.) MyPort points to the broad language of the agreement "conveying and manifesting an intent to convey all related patent rights and, in particular, all rights necessary to enforce the [Patents-in-Suit]." (*Id.* (citing Dkt. No. 56 (MyPort's Response) at 7).)

8

Third, MyPort argues that the Patents-in-Suit are enforceable. (*Id.* at 4–5.) MyPort argues that Samsung has failed to cite any case law establishing that a long-expired patent can and must be continually transferred any time a live terminally-disclaimed child patent is transferred, else the terminally disclaimed patents will be rendered permanently unenforceable. (*Id.* at 4.) MyPort further argues that Samsung did not even attempt to distinguish any of MyPort's cited cases. (*Id.*) Further, MyPort asserts that Samsung has not cited any case indicating that the April 19, 2023 agreement cannot cure any alleged defect in the Assignment for the period between January 22, 2022 and April 19, 2023. (*Id.* at 4–5.) Last, MyPort argues that *Rembrandt* is distinguishable because the April 19, 2023 agreement ensures that the terminal disclaimer statute's purpose is achieved—the purpose being to "prevent harassment by multiple suits on patently indistinct patents by different assignees." (*Id.* at 5 (quoting Dkt. No. 59 (Samsung's Reply) at 5.)

As an initial matter the Court notes that MyPort has not made, and does not appear to be attempting to make, an end-run around the purpose of terminal disclaimers. The '438 Patent has long expired and there is no indication that MyPort has attempted to separate the ownership of the '438 Patent from the Patents-in-Suit so that multiple entities could enforce the four patents. Indeed, the '438 Patent cannot ever be revived. Thus, *Rembrandt* is distinguishable. 853 F.3d 1370. The Court perceives that the policy goal behind the terminal disclaimer has not been thwarted.

Samsung argues that the Patents-in-Suit and the '438 Patent were not commonly owned at least between January 22, 2022 and April 19, 2023. The Court is not persuaded for two reasons.

First, the Court finds that Patents-in-Suit and the '438 Patent were and are both commonly owned by Mr. Malone, who owns the entirety of both MyPort (which holds the Patents-in-Suit) and MyPort IP (which according to Samsung, held the '438 Patent since January 22, 2022). The MPEP defines common ownership to include this exact scenario—where a terminally disclaimed

9

patent and that patent from which it disclaims are separately owned by corporations that are themselves wholly owned by a single parent. MPEP § 2146.02 ("Example 1[:] Parent Company owns 100% of Subsidiaries A and B … [I]nventions of A and B are commonly owned by the Parent Company.") Mr. Malone owns 100% of both MyPort and MyPort IP so the Patents-in-Suit and the '438 Patent have been commonly owned since at least January 22, 2022. This conclusion supports the reality MyPort has not made an end-run around the purpose of the terminal disclaimer.

Indeed, the MPEP is not binding authority as Samsung argues, but it "is entitled to judicial notice so far as it is an official interpretation of statutes or regulations with which it is not in conflict." *Airbus*, 793 F.3d at 1380 (quotations omitted). Samsung cites no statute or regulation with which this portion of the MPEP conflicts. However, Samsung argues that the MPEP's interpretation of common ownership conflicts with the Federal Circuit's decision in *Schreiber Foods, Inc. v. Beatrice Cheese, Inc*. 402 F.3d 1198 (Fed. Cir. 2005). Samsung's argument is deficient on its face because *Schreiber* is not a "statute[] or regulation[]," *Airbus*, 793 F.3d at 1380 (quotations omitted), and it is also incorrect substantively. In *Schreiber*, one of the asserted patents was terminally disclaimed to a second asserted patent. 402 F.3d at 1200–01. During the litigation the plaintiff assigned the second asserted patent to a wholly-owned subsidiary for tax purposes, and the subsidiary granted the plaintiff a non-exclusive license to the second asserted patent. *Id.* at 1200. The plaintiff did not inform the district court or opposing counsel of this until after the trial had been completed and a verdict returned in its favor. *Id.* at 1201. After a new trial, the district court granted defendant's motion to vacate the judgement pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *Id.* at 1201–02. "Under Rule 60(b)(3), relief from judgment is warranted when there is fraud, misrepresentation, or other misconduct." *Id.* at 1205. In describing the district court's opinion, the Federal Circuit noted that "[t]he district court found that [the defendant] was

10

prejudiced because, *inter alia*, if it had known of the assignments, it would have had strong arguments that the [asserted terminally disclaimed] patent was unenforceable and that the damages should have been reduced." *Id.* In affirming the district court's decision to vacate the judgment, the Federal Circuit did not rely on this in any way. *See id.* Instead, the court relied on another Federal Circuit case which found that the district court abused its discretion in denying a Rule 60(b)(3) motion on the ground that fraud tainted the evidence. *Id.* Accordingly, the MPEP's interpretation of common ownership does not conflict with the Federal Circuit's holding in *Schreiber*. Samsung also cites *Email Link* to compel an opposite result, but that court did not address this section of the MPEP. No. 2:11-cv-01433-ECR-GWF (D. Nev. Sept. 25, 2012).

Second, the Court finds that the April 19, 2023 agreement assigned to MyPort any rights owned by MyPort IP in the '438 Patent effective as of to January 22, 2022. MyPort cites Texas law (that Samsung does not contradict) holding that assignment agreements may be retroactive. *Deutsche Bank Nat'l Trust Co.*, 655 Fed. Appx. at 254 ("At least two Texas Courts of Appeals have considered this very question and both have held that an assignment may have a retroactive 'effective date.'") Further, such an agreement is not an impermissible *nunc pro tunc* assignment. Samsung admits that *nunc pro tunc* assignments are permissible in some circumstances, but they cite no authority demonstrating that the April 19, 2023 agreement is impermissible. (Dkt. No. 59 at 5.) It is, after all, Samsung's burden to show that it is entitled to judgment as a matter of law. Accordingly, in light of these particular circumstances, where the '438 Patent was expired and there was no attempt to enforce it separate from the Patents-in-Suit, the Court holds that the April 19, 2023 assignment cured any defect (if any) pertaining to the terminal disclaimers of the Patents-in-Suit.

The Court does not address MyPort's remaining counterarguments because it does not find Samsung's initial argument, that the Patents-in-Suit and the '438 Patent were not co-owned, to be persuasive.

V.   **CONCLUSION**

For the foregoing reasons, the Motion (Dkt. No. 52) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 29th day of August, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE